# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br> )<br> )  **Criminal Case No.: 1:16-CR-00004-KBJ**<br> )<br>v. )  **Judge: Brown Jackson**<br> )<br>MCC CONSTRUCTION CORP, )  **Sentencing:  March 15, 2016**<br>    Defendant. )<br> )<br> ) | |

## DEFENDANT MCC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## PLEA AGREEMENT AND IN AID OF SENTENCING

Defendant MCC Construction Corporation ("MCC") respectfully submits this Supplemental Memorandum in Support of the Plea Agreement and in Aid of Sentencing.  MCC and the United States have entered into a plea agreement pursuant to Rule 11(c)(1)(C), and respectfully request that, after review and consideration, this Court accept the terms of the Plea Agreement and sentence MCC according to the terms of the Plea Agreement.  MCC entered a guilty plea before Your Honor on February 2, 2016.

This submission supplements MCC's Memorandum in Support of Plea Agreement and in Aid of Sentencing filed under seal with this Court on January 27, 2016, and is submitted in response to the Court's questions during the Plea Hearing on February 2, 2016, and in response to the Probation Office's report to Your Honor regarding these sentencing issues.  MCC respectfully requests that this memorandum is considered together with the original Memorandum in Support of Plea Agreement and in Aid of Sentencing.

At the Plea Hearing on February 2, 2016, this Court requested the guidance of the Probation Office on two issues:

2062704.1

> THE COURT:  First, I want to evaluate the parties' proposed sentencing guideline calculation and in particular whether the guidelines permit what appears to be $1.2 million gain to the defendant to be the benchmark for the loss figure under these circumstances presented here, but I wanted to drill down on this.
>
> * * *
>
> But it does raise the question whether gain can be substituted for loss in this context for the purpose of the guideline calculation.
>
> * * *
>
> The second [issue] is I'd just like the probation office to help me assess whether a period of corporate probation would be appropriate in this case.  And, if so, what the likely terms would be.
>
> * * *
>
>  … and it may well be the gain is appropriately substituted for loss under the circumstances here, in which case there's no issue; all right?

Plea Hearing Transcript at 20-23.

As discussed more fully below, the short answer to Your Honor's first question is "yes." The Sentencing Guidelines permit the use of gain or the loss in the calculation of the sentence. The short answer to the second question posed by the Court is "no." Probation is not necessary or even possible, because MCC has been winding down its affairs and soon MCC will have no ongoing operations and be a dormant company without any employees.

Counsel has received a copy of the Probation Office's Sentencing Guidelines Calculation submission ("Probation Submission") dated March 7, 2016.  By letter dated February 29, 2016, counsel for MCC provided the Probation Department with a detailed analysis regarding the questions this Court posed at the Plea Hearing.  The Probation Submission does not indicate that counsel's submission was received or considered.

In fact, the Probation Submission does not directly address the first question posed by Your Honor:  whether gain may properly be substituted for loss in this context for the purpose of this sentencing guidelines calculation.  Rather, the Submission appears to assume that loss to the

government should be used in this case, and that the total value of the contracts is the proper amount that should be used as the loss amount. The Submission does not provide any support for this position or reasoning as to why the loss number used in its calculations is the proper base number for the sentencing calculation. Counsel for MCC respectfully disagrees with the Probation Submission's calculations and believes the Submission's position is untenable in light of recent case law. Further, such calculation results in an absurdly large fine that dwarfs all prior fines in similar cases, most notably the $2.5 million fine in the *Washington Gas* case Your Honor recently handled.

Thus, as discussed more fully below, MCC respectfully disagrees with the Probation Office's calculation. MCC agrees with the Probation Submission's determination that corporate probation is not necessary in this case and provides further support for this position below.

## I.     Gain is Appropriately Substituted for Loss Under the Circumstances of this Case

The starting point in analyzing the sentence in this case is the maximum statutory penalty. The offense is conspiracy, and under 18 U.S.C. 371, the maximum fine is $250,000 or twice the pecuniary gain or loss. The Sentencing Guidelines likewise expressly provide that the fine should be calculated with either the pecuniary gain or the pecuniary loss, whichever is greater (assuming either is greater than $250,000). *See* United States Sentencing Commission, Guideline Manual, §8C2.4(a)(2) (Nov. 2015) ("USSG"). *See also* Organizational Worksheet C.

The conduct at issue in the plea agreement encompasses a total of 27 subcontracts that MCC had with two prime contractors that were small businesses. The first contract was awarded in June 2008; the last contract at issue was awarded in April 2011. The majority of the contracts were for less than $1 million. The vast majority of the combined approximately $65 million in

revenue MCC received from the small business prime contractor came under three subcontracts. The first subcontract that was awarded involved work at Fort Jackson, and resulted in approximately $30 million in revenue for MCC.  MCC's profit on that subcontract was less than $1 million.  Taken together, MCC lost approximately $62,000 on the 27 subcontracts.

Under each and every contract at issue, the Government received the benefit of its bargain – quality construction work at a competitive price.  MCC earned numerous accolades from the Government for its work on those contracts, and there is absolutely no suggestion that any of the work was anything other than first class.  Thus, the Government suffered no loss from the small business prime contractors not having performed more of the work than they did, and the Government in this case has never taken a contrary view.

Recently the Third Circuit and the Ninth Circuit Courts of Appeals issued opinions in government contracts fraud cases that reinforce that the proper measure for calculating a sentence is the value of the contracts at issue minus the fair market value of the services provided.

In *United States v. Nagle*, the Third Circuit held that loss in a small business government contracts fraud case is the net loss, which means "taking the face value of the contracts and subtracting the fair market value of the services rendered under those contracts."  803 F.3d 167, 183 (3d Cir. 2015).   The Third Circuit vacated the sentences of two co-owners of a company who conspired to use a minority-owned front company to win $136 million in construction contracts.  *Id.*  The Third Circuit found that the district court had improperly calculated the loss under Section 2B1.1 of the Sentencing Guidelines by failing to subtract from the total value of the contracts the value of the work performed on the contracts, including cost of materials and labor.

The Ninth Circuit recently reached a similar result, and held that, in cases involving disadvantaged business set-aside contracts, courts must subtract from the price of the contract the value of the services rendered to the government. *See United States v. Martin,* 796 F. 3d 1101, 1110 (9th Cir. 2015) ("It would be unjust to set the loss resulting from [the defendant's] fraud as the entire value of the contracts" where the defendant performed all of the contracts).

Applying the doctrine of *Nagle* and *Martin* to this case, there is no loss to the Government because the value of the work performed pursuant to the contracts at issue equals the amounts the Government paid for that work.

The Government previously argued that it could take the position that the entire value of the contracts constitutes the loss to the Government. Thus, the Government insisted on including footnotes 1 and 2 to the Plea Agreement reserving the Government's right to make such an argument if the plea agreement is rejected. Such a view ignores the benefit the Government received as a result of the successful performance of each and every contract at issue. This Court requested guidance from the Probation Office regarding whether the calculation in the plea agreement was proper and whether gain could be properly substituted for loss in this instance. The Probation Submission assumes that the $65 million number in the Government's footnotes to the Plea Agreement, representing the aggregate face value of all of the 27 subcontracts, is the number to be used in the guidelines calculation. The Probation Submission does not provide support or reasoning for its use of that figure; instead, it simply computes the guidelines calculations with this number, without any reduction for the value of services performed. As MCC believes there was no loss to the Government, we next turn to the calculation of any gain to MCC, as directed by the Guidelines.

II.     **MCC's Misconduct Resulted in Pecuniary Gain of No More than $1.3M**

The Guidelines recommend that the figure for sentencing shall be based on either the loss to the Government or any gain to MCC. As discussed above, MCC strongly believes there was no loss to the Government based on *Nagle* and *Martin*. Thus, we consider the gain, if any, that MCC earned on the contracts.

MCC suffered an overall loss on the 27 subcontracts it had with the two small business prime contractors. The forfeiture amount in the plea agreement is based only on the 12 profitable contracts and without any offset for the 15 on which MCC suffered a loss. That calculation results in a forfeiture of $1,269,294 in profits by MCC.

For purposes of the Plea Agreement, MCC acquiesced to the Government's method of considering only the profitable contracts and not the contracts on which MCC lost money in calculating the forfeiture amount. MCC agreed to the Government's stance because it was not willing to take the risk that the Government would succeed on its position that the overall contract value of all the contracts – approximately $65 million – was a loss amount that should be used in the Guidelines calculation. Given the fact that there is case law both sides can point to support their position, MCC could not be certain that the Court would not adopt the Government's position and measure the fine based upon the total value of the contracts. Thus, due to the overall litigation risk, and in furtherance of a resolution, MCC consented to the Government's use of only the profitable contracts in the plea agreement.

If we assume that the Probation Office is correct in its Submission and the multiplier is between 1 and 2, then the fine range, using the profits on the profitable contracts of $1,269,294, is between that amount and $2,538,588. The parties have agreed to a total payment of $1,769,294 – almost the exact midpoint of that range, or a multiplier of 1.43.

MCC's original position was based on the belief that focusing exclusively on the profitable contracts and ignoring the unprofitable contracts was inequitable and contrary to well-established case law.  The purpose of ordering a defendant to pay the government — *i.e.,* disgorge — ill-gotten profits is to "deprive a wrongdoer of his unjust enrichment," not to punish the defendant.  *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C. Cir. 1989); *see also SEC v. Contorinis,* 743 F.3d 296, 301 (2d Cir. 2014) ("Disgorgement is an equitable remedy, imposed to forc[e] a defendant to give up the amount by which he was unjustly enriched.") (citing *FTC v. Bronson Partners,* 654 F.3d 359, 372 (2d Cir. 2011), quoting *SEC v. Commonwealth Chem. Secs., Inc.,* 574 F.2d 90,102 (2d Cir. 1978)) (internal quotation marks omitted); *SEC v. Blatt,* 583 F.2d 1325, 1335 (5th Cir. 1978) ("The purpose of disgorgement is . . . to deprive the wrongdoer of his ill-gotten gain.") (citing *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 102 (2d Cir. 1978)).

Courts routinely limit disgorgement to the amount of profit actually created through the misconduct.  *First City,* 890 F.2d at 1231 ("Since disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property causally related to the wrongdoing."); *Contorinis,* 743 F.3d at 301 ("Because disgorgement does not serve a punitive function, the disgorgement amount may not exceed the amount obtained through the wrongdoing."); *Blatt,* 583 F.2d at 1335 ("The court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing.  Any further sum would constitute a penalty assessment."); *SEC v. Wyly,* 56 F. Supp. 3d 260, 270 (S.D.N.Y 2014) (applying causality principle in limiting disgorgement of profits where it "defie[d] logic to presume" that all of the profits were reasonably attributable to the misconduct).

Furthermore, in calculating profits caused by a defendant's misconduct, courts allow offsets for losses. *SEC v. Video Without Boundaries, Inc.,* No. 08-61517-cv, 2010 WL 5790684, at *5 (S.D. Fla. Dec. 8, 2010) ("where a defendant's fraudulent scheme generated a combination of profits and losses, then a court considering disgorgement as to that defendant must consider the losses as well as the profits"); *SEC v. McCaskey,* No. 98 Civ. 6153, 2002 U.S. Dist. LEXIS 4915, at *26 (S.D.N.Y. Mar. 26, 2002) (disgorgement inappropriate where the defendant's profits were more than offset by his losses during the period of misconduct); *Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of America-College Ret & Equities Fund,* 290 F.R.D. 452, 462 (D. Vt. 2013) (refusing to allow disgorgement where the assets at issue lost value because "[i]f the account value went down, there is nothing to disgorge"). Thus, MCC originally claimed that it was inappropriate to base disgorgement only on the profitable contracts.

Fundamental principles of disgorgement underpin cases such as *Video Without Boundaries* and *McCaskey*. In *Video Without Boundaries,* the court allowed an offset for loss-generating transactions within a "pump and dump" scheme that spanned roughly four years. In that case, the court did not arbitrarily break down the scheme into discrete transactions and consider only those that generated profits; rather, it considered the profits from the scheme *as a whole,* which included the loss-generating transactions. As the court noted in that case, an offset for losses is appropriate because "the remedy of disgorgement is only triggered by a defendant's *profit* or *gain* or *enrichment,*" and because "disgorgement is a tool used to rid a defendant of *total gains.*" *Video Without Boundaries,* 2010 WL 5790684, at *5 (emphasis in original). In short, where a company's transactions have "depleted its own value. . . . [,] disgorgement would be improper under this binding case law." *Id.*

Similarly, in *McCaskey,* the court held that disgorgement was inappropriate where the defendant suffered a net loss on a stock manipulation scheme that involved a combination of loss-generating wash trades and profit-generating sales. Notably, the court rejected the SEC's disgorgement theory, which was "based solely on [defendant's] sales on sixteen days, ignoring all other transactions during the more than six-month manipulation scheme." *McCaskey,* 2002 U.S. Dist. LEXIS 4915, at *22, *28. In particular, the court noted: "In light of the SEC's treatment of all these transactions as a *unitary scheme, . . .* it would ignore reality to arbitrarily separate the Wash Trades from the sixteen days of sales." *Id.* at *28 (emphasis added). In other words, the court did not allow the SEC to cherry-pick profit-generating transactions in calculating disgorgement but required the profits and losses from the scheme to be considered *as a whole.* Here, MCC suffered an overall loss on the 27 subcontracts at issue, and therefore, took the original position that MCC had no "total gains" to disgorge. Based on these principles, MCC took the position that it was inappropriate to base disgorgement on 12 contracts from which there were profits without factoring in losses from the 15 remaining contracts. However, MCC was ultimately unwilling to take the risk that the Government would prevail on its position that the entire value of the contracts – $65 million – constitutes the loss to the Government for sentencing purposes.[1]

### III.   Corporate Probation is Not Appropriate for MCC

---

[1] In 2010, the Small Business Chapter, 15 U.S.C. § 632, was revised to add a rebuttable presumption of loss to the government based on the total amount of the contract. A contractor can presumably rebut this presumption with evidence of the value conferred by the contractor on the government. Regulations implementing this statutory provision became effective August 27, 2013, and provide further guidance on its application. Small Business Size and Status Integrity, 78 Fed. Reg. 38811 (June 28, 2013) (codified at 13 C.F.R. § 121.411). The conduct at issue in this action occurred prior to the effective dates of the final rules issued by the Small Business Administration. Further, courts have not yet ruled on this statutory provision. Due to the uncertainty surrounding the fairly recent statute and regulations, MCC and the Government recognized the potential litigation risks associated with the Guidelines calculation and reached the negotiated Plea Agreement currently before Your Honor.

MCC agrees with the Probation Submission's recommendation that corporate probation is neither appropriate nor possible in this case because MCC is virtually a nonexistent entity. *See* Probation Submission para. 19.  MCC has no current employees, assets, property and virtually no ongoing business.  MCC began the wind-down of is operations in 2013 and is currently in the final stages of its dissolution.

The Introductory Commentary to Chapter 8 of the U.S. Sentencing Guidelines provides that "probation is an appropriate sentence for an organizational defendant when needed to ensure that another sanction will be fully implemented, or to ensure that steps will be taken within the organization to reduce the likelihood of future criminal conduct."  USSG Ch.8, Pt.D, intro. comment.  Probation is necessarily inappropriate in this instance because MCC is prepared to satisfy its obligations at or prior to sentencing and is essentially a dormant company without ongoing business or employees.  Further, the employees responsible for the underlying criminal conduct were terminated following the discovery of such action.

Organizational probation is not required to ensure that MCC complies with the financial obligations agreed to with the Government in the Plea Agreement. *See* USSG §§ 8D1.1(a)(1)-(2). As described above, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, MCC and the Government agreed to a fine of $500,000; forfeiture of profits totaling $1,269,294; and a special assessment of $400.  MCC will make a full payment of the fines and disgorgement figure at or before the sentencing hearing scheduled for March 15, 2016.  In fact, MCC was prepared to make these payments at the February 2, 2016, hearing. *See* Plea Hearing Transcript at 13:12-14.  Because MCC will pay the full amount of $1,769,694, at or before sentencing, it is not necessary to impose a term of organizational probation in order to secure

MCC's payment.  Further, in this case the six passive owners who were not involved in the criminal conduct underlying this action have agreed to pay the above amount on behalf of MCC.

Second, because MCC is virtually a dormant entity, without employees or ongoing business, the imposition of probation is not necessary to prevent future misconduct by MCC. *See* USSG §§ 8D1.1(a)(3)-(6).  MCC is close to completing its final contract.  The only remaining work involves grading and drainage, asphalt, and fencing.  That work should be completed by June 2016.  Organizational probation is not necessary or appropriate to prevent the likelihood of future misconduct where the entity is dormant and no longer conducting business. *See e.g.* United States' Sentencing Memorandum, *USA v. Universal Pharmacy Co.* No. 2:06-cr-00394-RK, 2007 WL 5032787 (E.D. Pa. May 18, 2007), ECF No. 44 (organizational probation not necessary where corporation is defunct and there is an enforceable forfeiture order); Plea Agreement, *USA v. Latin Node*, 1:09-cr-20239-PCH (S.D. Fla. Apr. 03, 2009), ECF No. 4 (organizational probation not necessary because of corporate form and lack of ongoing business); Judgment, *US v. Wegelin*, No. 1:12-cr-00002-JSR (S.D.N.Y. Mar. 8, 2013), ECF No. 26 (one month probation imposed solely to ensure payment of plea agreement amount).  As Judge Huvelle of the District Court for the District of Columbia discussed at length during the defendant corporation's sentencing hearing in *United States v. Habibion*, imposing a term of organizational probation on a defunct corporation places a burden the probation office and serves no purpose other than securing payment.  Judgment, *USA v. Online Micro* No. 1:11-cr-118-ESH (D.D.C. May 18, 2012), ECF No. 110 (sentencing defunct defendant corporation to one day of probation to ensure payment of sentencing obligations).  Thus, the imposition of organizational probation is not warranted or necessary in this instance.

11

Further, the Government and MCC agreed to a negotiated plea agreement that did not include a term of probation. In fact, the Government did not seek probation, at least in part due to the fact that MCC is no longer operating at the time of sentencing. Thus, the imposition of corporate probation in this instance is not appropriate.

Finally, neither MCC nor its high-level personnel have engaged in criminal misconduct in the five years preceding the entry of this plea agreement. *See* USSG §§ 8D1.1(4)-(5). Indeed, the plea agreement assigned MCC a criminal history score of zero. In fact, MCC took affirmative action to ensure there would not be future misconduct by firing those responsible for the conduct at issue. Therefore, in addition to the reasons articulated above, organizational probation is not warranted here because neither MCC nor its high-level personnel are repeat offenders.

                                                Respectfully submitted,

Dated:  March 11, 2016                     /s/ Kirby D. Behre
                                            Kirby D. Behre, Bar No. 398461
                                            Adam P. Feinberg
                                            Lauren A. Briggerman
                                            MILLER & CHEVALIER CHARTERED
                                            655 Fifteenth Street, N.W., Suite 900
                                            Washington, D.C.  20005-5701
                                            (202) 626-5800 (telephone)
                                            (202) 626-5801 (facsimile)
                                            E-mail: kbehre@milchev.com
                                                        afeinberg@milchev.com
                                                        lbriggerman@milchev.com

                                            *Attorneys for MCC Construction Corp.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 11th day of March, 2016, a true and genuine copy of the foregoing was served on the following by ECF:

Matthew Graves
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20001
Matthew.graves@usdoj.gov

Kevin Hart
US Department of Justice – Antitrust Division
450 Fifth Street, NW Suite 11300
Washington, DC 20530
Kevin.Hart@usdoj.gov

*Counsel for the United States of America*

/s/ Kirby D. Behre
Kirby D. Behre, Bar No. 398461
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C. 20005-5701
(202) 626-5800 (telephone)
(202) 626-5801 (facsimile)
E-mail: kbehre@milchev.com